Dear Ms. Boudreaux:
You have requested the opinion of this office regarding price gouging laws in Louisiana, and have referenced the effect of the damage to the energy infrastructure along the Gulf Coast on the prices of gasoline in particular. You have also specifically requested the opinion of this office regarding the authority for the enforcement of price gouging laws.
First, there are no federal laws that specifically address price gouging. Specific price gouging laws exist only in state law and, in Louisiana, are applicable only during a state of emergency. The following is an analysis of Louisiana's price gouging laws.
A. LSA-R.S.29:732
LSA-R.S. 29:732 is the first of the two civil price gouging statutes in Louisiana. According to the statute, Louisiana's price gouging laws are triggered by the existence of a state of emergency, and are applicable for the duration of the state of emergency. Under current law, the triggering events are defined in Paragraph (A) of LSA-R.S. 29:732, in pertinent part, as follows:
 "During a state of emergency declared by the Governor or Parish President, or during a named tropical storm or hurricane in or threatening the Gulf of Mexico . . ."
It is important to note that, for purposes of triggering the price gouging laws, a state of emergency exists during a named tropical storm or hurricane in or merely threatening the Gulf of Mexico, regardless as to whether a declaration is made by the Governor or Parish President. *Page 2 
Where some of the twenty-eight states that have price gouging laws define price gouging as consisting of a 10 or 15 percent increase in average prices,[1] Louisiana leaves the decision to the courts by defining gouging in much broader terms. Louisiana Revised Statute 29:732 goes on to provide the Louisiana definition of price gouging as follows:
 ". . . the value received for goods and services sold within the designated emergency area may not exceed the prices ordinarily charged for comparable goods and services in the same market area at, or immediately before, the time of the state of emergency . . ."
The broader language of Louisiana's law in and of itself may act as a deterrent to businesses increasing prices during a state of emergency, out of concern for potentially violating the price gouging statute. The Louisiana price gouging law is thereby philosophically different than a bright-line "percentage of average prices" approach.
As the broader language allows for a customized analysis of the facts of each case, Louisiana fairly makes allowances for a business to increase their prices of goods and services, based upon any reasonable extra costs to the business that may be involved in delivering a product or service within a disaster area during a state of emergency. LSA-R.S. 29:732, referenced hereinabove, continues as follows:
 "However the value received may include reasonable business expenses and a charge for any attendant business risk, in addition to the cost of the goods and services during the state of emergency."
LSA-R.S. 29:732 not only explains when price gouging laws are applicable and what price gouging is, but also answers the question as to what types of things are subject to price gouging laws. The statute provides that price gouging laws apply to "goods and services." The statute does not provide for a specific definition of what types of things are included as "goods and services". Therefore, there is no risk that an illustrative
list of goods and services might be interpreted by the courts as an exclusive list of goods and services to which the price gouging law applies. Instead, under current law, price gouging laws are applicable to anything that is arguably a "good" or a "service", allowing for the most flexible application of the laws.
The definition of price gouging and the types of things to which it applies has been a subject of much debate and analysis in the aftermath of Hurricanes Katrina and Rita as businesses search for solid answers to the question of how much they can raise their prices during a state of emergency without breaking the law and whether their particular goods or services are subject to the price gouging laws at all. *Page 3 
However, gasoline and other fuels are easily categorized as "goods", and are not subject to other scrutiny by a specific regulatory state agency. Therefore, there has been no argument against the assertion that gasoline and other fuels are clearly subject to the state's price gouging laws.
Under LSA-R.S. 29:732, as referenced hereinabove, each sale of a good or service constitutes a separate act of price gouging. Paragraph (B) of LSA-R.S. 29:732 provides as follows:
 "Each sale or offer for sale in violation of this section constitutes a separate offense."
It is important to note that by virtue of Paragraph (B),supra, not only is the sale of a good or a service subject to price gouging laws during a state of emergency, but also is the"offer for sale" of a good or service. In order to constitute a violation of LSA-R.S. 29:732, the seller need only price the good or service in a manner as to be violative of the statute,whether or not a potential buyer actually purchases that good or service at that price. Furthermore, each time that a seller presents that price to a potential buyer constitutes a separate offense.
Next, paragraph (C) of LSA-R.S. 29:732 provides that civil penalties, including attorney's fees, are available for violations of LSA-R.S. 29:732, and introduces the second of the four price gouging statutes, LSA-R.S. 29:734, where additional penalties can be found. LSA-R.S. 29:732 (C) provides as follows:
 "The penalties provided in LSA-R.S. 29:734 are in addition to civil penalties provided by law, including attorney's fees."
Lastly, LSA-R.S. 29:732 is also comprised of paragraph (D), which allows local governing authorities to adopt ordinances with regard to implementing the price gouging laws. LSA-R.S.29:732(D) provides as follows:
 "Local governing authorities may adopt appropriate ordinances to implement the provisions of this Section."
By granting the local authorities the power to create ordinances to implement the law as found in LSA-R.S. 29:732, as explained hereinabove, the state is ensuring the most customized and knowledgeable approach to protecting citizens from price gouging.
B. LSA-R.S. 29:734
LSA-R.S. 29:734 is the second of the two civil statutes regarding price gouging. It successfully accomplishes three goals: first, it sets forth the individuals who are given the authority to bring a civil action for price gouging; second, it gives a formula by which *Page 4 prima facie evidence of price gouging may be shown; third, it serves as a bridge, linking the civil price gouging statute and the criminal price gouging statute.
First, under paragraph (A), the attorney general, the district attorney or the parish attorney are specifically and exclusively given the authority to bring a civil action for a violation of LSA-R.S. 29:732, discussed hereinabove. Specifically, LSA-R.S.29:734 provides, in pertinent part, as follows:
 A. Upon a violation of LSA-R.S. 29:732, the attorney general, district attorney, or parish attorney may bring the appropriate judicial action for an order enjoining or restraining commission or continuance of the alleged unlawful acts. In any such proceeding, the court may impose a civil penalty and, where appropriate, order restitution to aggrieved consumers.
Second, under Paragraph (B) of LSA-R.S. 29:734 provides for the formula by which one can establish prima facie evidence of price gouging as follows:
 B. In any proceeding instituted pursuant to this Section, the following shall constitute prima facie proof of a violation:
 (1) Evidence that the amount charged represents a gross disparity between the price of the goods or services which were the subject of the transaction and their value, measured by the price at which such goods or services were sold or offered for sale by the seller in the usual course of business immediately prior to the onset of the abnormal disruption of the market, and the amount charged by the seller was not attributable to additional costs imposed by its suppliers.
 (2) Evidence that the amount charged grossly exceeded the price at which the same or similar goods or services were readily obtainable by other consumers in the trade area and the amount charged by the seller was not attributable to additional costs imposed by its suppliers.
The above and foregoing sections provides that two situations act as evidence of price gouging on their very faces. The first situation is described in subsection (1), provided hereinabove. In that case, evidence of price gouging exists when one can show that the price a seller charged consumers during the state of emergency is grossly disparate from the prices the same seller charged before the emergency, and that his increase in price is not due to an increase in his additional costs from his suppliers.
The second manner of showing such prima facie evidence of price gouging is described in subsection (2), provided hereinabove. In this scenario, evidence of price gouging exists when one can show that the price a seller was charging consumers during the *Page 5 
state of emergency grossly exceeded the prices other sellers in the area were charging consumers for same or similar goods or services, and that additional costs from his suppliers are not the reason for the higher prices.
Because "gross disparity" and "grossly exceeded" are not defined terms, even the statutorily provided formula as to what constitutes prima facie evidence of price gouging must be left to the discretion of the courts for determination as to its sufficiency.
In all circumstances, it is important to note that primafacie evidence of price gouging is not the only evidence that may exist and that may be used to support a civil action for price gouging. Other evidence also may be relevant and may be sufficient to prove price gouging, as is within the discretion of the court to decide on a case by case basis, in light of all the facts and the law.
Lastly, under paragraph (C) of LSA-R.S. 29:734, a bridge exists to link the civil statutes to the first criminal price gouging statute, LSA-R.S. 14:329.6, which defines the crime of price gouging, as well as to the second criminal price gouging statute, LSA-R.S. 14:329.7, which sets forth the criminal penalties for violating LSA-R.S. 14:329.6.
As such, paragraph (C) of LSA-R.S. 29:734 reads as follows:
 C. In addition to the civil penalties provided herein, any person who violates the provisions of R.S. 29:732, which violation is deemed a violation also of R.S. 14:329.6, shall be subject to criminal penalties as provided in R.S. 14:329.7.
Paragraph (C) of LSA-R.S. 29:734, supra, accordingly provides that anyone who violates the civil price gouging laws also automatically violates the criminal price gouging laws as found in Title 14, as will be further discussed herein below.
C. LSA-R.S. 14:329.6
Not only is price gouging subject to civil action, but it is also an activity that is subject to criminal prosecution. These two separate legal proceedings are not mutually exclusive. Both a civil action and a criminal prosecution can be brought against a seller for price gouging.
LSA-R.S. 14:329.6 addresses matters of great public crisis during which a state of emergency can be declared. By virtue of that statute, several activities, price gouging included, are crimes during a state of emergency. LSA-R.S. 14:329.6, in pertinent part, reads as follows:
 A. During times of great public crisis, disaster, rioting, catastrophe, or similar public emergency within the territorial limits of any municipality or parish, or in the event of reasonable apprehension of *Page 6 immediate danger thereof, and upon a finding that the public safety is imperiled thereby, the chief executive officer of any political subdivision or the district judge, district attorney, or the sheriff of any parish of this state, or the public safety director of a municipality, may request the governor to proclaim a state of emergency within any part or all of the territorial limits of such local government. Following such proclamation by the governor, and during the continuance of such state of emergency, the chief law enforcement officer of the political subdivision affected by the proclamation may, in order to protect life and property and to bring the emergency situation under control, promulgate orders affecting any part or all of the territorial limits of the municipality or parish:
 (9) Prohibiting the sale or offer for sale of goods or services within the designated emergency area for value exceeding the prices ordinarily charged for comparable goods and services in the same market area at, or immediately before, the time of the state of emergency. However, the value received may include reasonable expenses and a charge for any attendant business risk in addition to the cost of the goods and services which necessarily are incurred in procuring the goods and services during the state of emergency, pursuant to the provisions of LSA-R.S. 29:701 through 716.
The above statute provides a detailed illustration of what types of things might cause the governor to declare a state of emergency. Of note is the fact that a state of emergency is defined more narrowly for the purpose of imposing criminal penalties for price gouging. The criminal statute requires that there be an actual declaration by the governor for a state of emergency to exist. As a result, in order for a person to be guilty of price gouging under the criminal statute, there must have been a declared state of emergency, unlike the law discussed hereinabove, as found in the civil price gouging statute.
Under the criminal price gouging statute, LSA-R.S. 14:329.6, despite the list of individuals who can request that the governor declare a state of emergency in paragraph (A), the authority to promulgate orders to "protect life and property" and "to bring the emergency situation under control" is bestowed only upon "the chief law enforcement officer of the political subdivision affected by the proclamation of the state of emergency". The chief law enforcement officer's orders under such circumstances may affect any part or all of the territorial limits of the municipality or parish.
LSA-R.S. 14:329.6 also addresses the proper procedure for the chief law enforcement officer to promulgate the orders to protect life and property and to bring the emergency situation under control. Paragraphs (B) and (C) provide as follows: *Page 7 
 B. Such orders shall be effective from the time and in the manner prescribed in such orders and shall be published as soon as practicable in a newspaper of general circulation in the area affected by such order and transmitted to the radio and television media for publication and broadcast. Such orders shall cease to be in effect five days after their promulgation or upon declaration by the governor that the state of emergency no longer exists, whichever occurs sooner, however, the chief law enforcement officer, with the consent of the governor, may extend the effect of such orders for successive periods of not more than five days each by republication of such orders in the manner hereinabove provided.
 C. All orders promulgated pursuant to this section shall be executed in triplicate and shall be filed with the clerk of court of the parish affected and with the secretary of state of this state.
LSA-R.S. 14:329.6 gives the chief law enforcement officer wide-reaching authority as to the nature of his orders by virtue of the broad language used. The law provides that the chief law enforcement officer's authority to promulgate orders must be to protect life and property and to bring the emergency situation under control. The orders that may be promulgated are not illustrated. It is the opinion of this office that, as the greater includes the lesser, the statute allows the chief law enforcement officer to take such measures as to issue a "cease and desist" order under the statutory conditions and within the statutory limitations of the criminal price gouging statute, LSA-R.S. 14:329.6.
The effect of the chief law enforcement officer's authority to promulgate such orders is limited significantly by the short duration of five days as well as by the procedural requirements of execution in triplicate and the availability of the affected parish(s)' clerk(s) of court and the Secretary of State. The statute provides that the chief law enforcement officer's order does not remain effective once the governor declares that the state of emergency no longer exists, or five days have passed, whichever is shorter. However, the syntax of the statute indicates that the orders may be renewed for five days at a time, with consent of the governor, possibly even after the state of emergency ceases to exist.
Paragraphs (D), (E) and (F) of LSA-R.S. 14:329.6 provide that the chief law enforcement officer may undertake various other activities to protect life and property and to bring the situation under control.[2] He may: *Page 8 
 (1) appoint additional peace officers or firemen for temporary service, whether or not the individuals appointed are otherwise classified as peace officers or firemen;
 (2) request the help of the sheriff, mayor or chief executive officer of another parish.
Additionally, during a state of emergency, certain first responders will be considered as acting within their own territories when acting within the affected parish(s) of the state of emergency, and a uniformed security guard, acting within the scope of his employment, shall not be prevented from entering the place of emergency, unless there is an imminent threat to his life.
D. LSA-R.S. 14:329.7
The second criminal statute that addresses price gouging is LSA-R.S. 14:329.7, which provides for the penalties for offenses as follows:
 A. Whoever willfully is the offender or participates in a riot, or is guilty of inciting a riot, or who fails to comply with a lawful command to disperse, or who is guilty of wrongful use of public property, or violates any other provision hereof shall be fined not more than five hundred dollars or be imprisoned not more than six months, or both.
 B. Where as a result of any willful violation of the provisions of R.S. 14:329.1 — 14:329.8 there is any serious bodily injury or any property *Page 9 damage in excess of five thousand dollars, such offender shall be imprisoned at hard labor for not more than five years.
 C. Where, as a result of any willful violation of the provisions of R.S. 14:329.1 — R.S. 14:329.8, the death of any person occurs, such offender shall be imprisoned at hard labor for not to exceed twenty-one years.
Absent a change in this statute, under current law, the criminal penalties for violating the provisions of LSA-R.S.14:329.6 apply to not only price gouging, but to the entire statute. Therefore, it is the opinion of this office that the penalties found in LSA-R.S. 14:329.6 apply, to the extent therein provided, to the following:
 (1) the chief law enforcement officer's failure to properly promulgate his orders;
 (2) anyone interfering with the chief law enforcement officer's authority to promulgate orders;
 (3) anyone who fails to obey the promulgated orders during their effectiveness;
 (4) anyone mentioned in the statute who fails to provide the assistance requested by the chief law enforcement officer when possible;
 (5) anyone who denies the authority of rescuers to perform their work as if in their own territory; or
 (6) anyone who prohibits a uniformed security guard from acting in accordance with his job to enter an emergency area, unless there is an imminent threat to his life.
In conclusion, we find that the attorney general, the district attorney or the parish attorney are specifically and exclusively given the authority to bring appropriate judicial action in the event of price gouging, which is the selling of goods or services, including gasoline, at a price during a state of emergency that exceeds the price normally charged, in accordance with LSA-R.S. 29:732 and 734 as well as LSA-R.S. 14:329.6 and 329.7. *Page 10 
If you have any further questions or find that I can be of any further assistance in this matter, please do not hesitate to contact me.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY: ____________________________ SUSAN H. CRAWFORD ASSISTANT ATTORNEY GENERAL
[1] See the National Conference of State Legislatures summary of State Laws and regulations: Price Gouging, available athttp://www.ncsl.org/programs/energy/lawsgouging.htm.
[2] entitled as incidents of their regular employment. Lawenforcement officers Paragraphs (D), (E) and (F) of LSA-R.S.14:329.6 read as follows:
D. During any period during which a state of emergency existsthe proclaiming officer may appoint additional peace officers orfiremen for temporary service, who need not be in the classifiedlists of such departments. Such additional persons shall beemployed only for the time during which the emergency exists.
 E. During the period of the existence of the state ofemergency the chief law enforcement officer of the politicalsubdivision may call upon the sheriff, mayor, or other chiefexecutive officer of any other parish or municipality to furnishsuch law enforcement or fire protection personnel, or both,together with appropriate equipment and apparatus, as may benecessary to preserve the public peace and protect persons andproperty in the requesting area. Such aid shall be furnished tothe chief law enforcement officer requesting it insofar aspossible without withdrawing from the political subdivisionfurnishing such aid the minimum police and fire protectionappearing necessary under the circumstances. In such cases when astate of emergency has been declared by the governor pursuant toR.S. 29:734 et seq., all first responders who are members of astate or local office of homeland security and emergencypreparedness, including but not limited to medical personnel,emergency medical technicians, persons called to active dutyservice in the uniformed services of the United States, LouisianaNational Guard, Louisiana Guard, Civil Air Patrol, lawenforcement and fire protection personnel acting outside theterritory of their regular employment shall be considered asperforming services within the territory of their regularemployment for purposes of compensation, pension, and otherrights or benefits to which they may be acting pursuant to thisSection outside the territory of their regular employment havethe same authority to enforce the law as when acting within theterritory of their own employment.
 F. Notwithstanding the provisions of this Section, except inan imminent life threatening situation nothing herein shallrestrict any uniformed employee of a licensed private securitycompany, acting within the scope of employment, from entering andremaining in an area where an emergency has been declared. Theprovisions of this Subsection shall apply if the licensed privatesecurity company submits a list of employees and their assignmentto be allowed into the area, to the Louisiana State Board ofPrivate Security Examiners, which shall forward the list to thechief law enforcement office of the parish and, if different, theagency in charge of the scene.